[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 25 2000
THOMAS K. KAHN
CLERK

_____

No. 98-08727

_____

D.C. Docket No. 97-CV-1830

RAYMOND W. BROWN,

Plaintiff-Appellant,

versus

JOHNNY SIKES, Warden, and his Doe(s)
staff of Georgia Department of Corrections,
LOUISE CASON; et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 25, 2000)**

Before CARNES, BARKETT and WILSON, Circuit Judges.

CARNES, Circuit Judge:

After filing two administrative grievances alleging that prison officials had

denied him necessary medical treatment Raymond Brown, a Georgia prisoner,

filed this 42 U.S.C. § 1983 action, which also claimed he had been denied medical

treatment. He named as defendants in the lawsuit the warden of his prison, Johnny

Sikes, and various "Doe" defendants. Brown eventually identified Wayne Garner,

who was then Commissioner of the Georgia Department of Corrections, as one of

the Doe defendants. Because Brown had not named either Sikes or Garner in his

two administrative grievances concerning the alleged denial of medical treatment,

the district court held that he had failed to exhaust his administrative remedies

against Sikes and Garner, as required by 42 U.S.C. § 1997e(a), which was enacted

as part of the Prison Litigation Reform Act ("PLRA"). On that basis, the court

dismissed the complaint, and Brown appeals.[1] For the reasons that

follow, we reverse and remand.

## I. BACKGROUND

---

[1]Brown also included in his complaint a claim that he had been kidnapped by prison authorities. He clearly had made no attempt to exhaust any administrative remedy regarding that claim, and just as clearly it is utterly frivolous. When pressed about the kidnapping claim at oral argument Brown's counsel essentially abandoned it, conceding it was frivolous and arguing we could separate that claim out from the medical treatment claim. We accept that invitation and discuss the kidnapping claim no further. Cf. 42 U.S.C. § 1997e(c)(2) ("In the event that a claim is, on its face, frivolous ... [or] fails to state a claim upon which relief can be granted ... the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.").

Brown is incarcerated in a Georgia state prison.  In June of 1997, he brought this pro se § 1983 civil rights lawsuit against Warden Sikes, Commissioner Garner, and "Doe(s) of Doe Medical Company," alleging that they had violated his Eighth Amendment rights by denying him necessary medical treatment.  Specifically, Brown claimed that the defendants deprived him of an athletic supporter and snacks that had been prescribed by a prison physician for treatment of his hernia.  Brown filed his lawsuit using a form civil rights complaint, which inquired as to his exhaustion of administrative remedies.  He stated in the form complaint that he "wrote more than one grievance, answer in all grievance refuse to order the Doe(s) of Doe Medical Department to comply with Doctor order of July 8, 1996 for Futuro Supporter and snack."

After filing answers to Brown's complaint, both Warden Sikes and Commissioner Garner filed motions to dismiss, contending the district court lacked subject matter jurisdiction over Brown's action because he had failed to exhaust his administrative remedies as required by § 1997e(a) of the PLRA.  The district court granted those motions to dismiss concluding that Brown had failed to exhaust available administrative remedies, and it entered judgment dismissing the case on May 12, 1998.  On June 1, 1998, Brown filed in the district court a pleading labeled  a "Request to Appeal," to which he attached copies of two administrative

3

grievances he had filed concerning the alleged denial of medical treatment for his hernia. On its docket sheet the district court described the pleading as a notice of appeal from the dismissal of Brown's complaint. In further response to that pleading, the district court on August 11, 1998 also issued a second order indicating that it had considered the two administrative grievances Brown had brought to its attention. In that August 11 order the district court nonetheless reaffirmed its dismissal of the lawsuit, explaining that "[b]ecause it appears that the only grievances filed by the plaintiff did not name the defendants in this action, this court adheres to its prior order, in which the court found that the plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e."

The district court denied Brown's motion to proceed in forma pauperis on appeal, but we granted him permission to do so, appointed counsel to represent him on appeal, and heard oral argument in the case.

## II. DISCUSSION

We review de novo the district court's dismissal of suit for failure to exhaust available administrative remedies under § 1997e(a) of the PLRA. See Alexander v. Hawk, 159 F.3d 1321, 1323 (11th Cir. 1998).[2]

---

[2] This Court has not yet decided whether a dismissal under § 1997e(a) amounts to a dismissal for failure to a state claim upon which relief may be granted, see Fed. R. Civ. P. 12(b)(6), or for lack of subject matter jurisdiction over the unexhausted claims, see Fed. R. Civ. P. 12(b)(1). The district court in this case did not clearly indicate which of those types of dismissals it was entering. Most

Section 1997e(a) provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As a result, when a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit. See Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) (providing general discussion of the Georgia Department of Corrections grievance procedure).

The question before us is whether the § 1997e(a) exhaustion requirement always prohibits a prisoner from suing any defendant other than those named in the administrative grievance the prisoner filed. We think that it does not. Instead, we conclude that while § 1997e(a) requires that a prisoner provide as much relevant

courts addressing this issue have decided that § 1997e(a) is not a jurisdictional mandate. See, e.g., Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) (stating that "we agree with the clear majority of courts that § 1997e(a) is not a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction") (emphasis in original) (citations omitted). However, because we conclude that the district court erred in holding that Brown had not exhausted his administrative remedies, we need not decide whether failure to exhaust under § 1997e(a) divests this Court of subject matter jurisdiction.

5

information as he reasonably can in the administrative grievance process, it does not require that he do more than that.

Section 1997e(a) requires a prisoner to exhaust all "available" administrative remedies, and implicit in that requirement is an obligation on the prisoner to provide those officials who will pass upon the grievance all the relevant information he has, including the identity of any officials he thinks have wronged him and any witnesses. But a prisoner cannot provide that which he does not have; he cannot identify those whose identities are unknown to him. Pegging our thinking to the words of the statute, a grievance procedure that requires a prisoner to provide information he does not have and cannot reasonably obtain is not a remedy that is "available" to the prisoner.

In Alexander v. Hawk, we noted seven important policies favoring an exhaustion of remedies requirement:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could

6

> weaken the effectiveness of an agency by encouraging
> people to ignore its procedures."

159 F.3d at 1327 (quoting Kobleur v. Group Hospitalization & Medical Services, Inc., 954 F.2d 705 (11th Cir. 1992)). Each one of those policies is furthered by reading § 1997e(a) to require that a prisoner provide with his grievance all relevant information reasonably available to him. None of those purposes is furthered by requiring a prisoner to do anything more than that – by shutting the courthouse door to a prisoner who, at the time he filed his grievance, did not know and could not readily ascertain the identity of the individuals responsible for the alleged injury or deprivation.[3]

---

[3] In support of their position that § 1997e(a) bars a lawsuit against any defendant not named in a prior grievance, the defendants rely upon Hartsfield v. Vidor, 199 F.3d 305 (6th Cir. 1999). In that prisoner lawsuit, Hartsfield alleged that two defendants, Vidor and Mowatt, had unconstitutionally placed him in "top-of-bed restraints" for an eighteen hour period. See id. at 306. He also alleged that those two, along with three other defendants, Crump, Kavanaugh and Breimayer, had unconstitutionally denied him access to fresh water and a toilet. See id. at 307, 309-10. While noting the parties' concession that Hartsfield had exhausted his administrative remedies as to Crump, Kavanaugh and Breimayer, see id. at 309, the Sixth Circuit held that Hartsfield had not exhausted as to Vidor and Mowatt, because "there [was] no record that grievances were actually filed against [those] defendants ...." Id. at 308-09.

The Sixth Circuit in Hartsfield did hold that § 1997e(a) barred a lawsuit against the two prison defendants not named in the grievance the plaintiff had filed. But the difference between that case and this one lies in the additional fact that the plaintiff in Hartsfield knew the identity of those two defendants and could have named them in a grievance. In fact, in Hartsfield, the prisoner not only acknowledged that he could have filed a grievance identifying those two defendants, he contended that he had done so even though the prison officials had no record of it. See id. at 308-09. Thus, the situation in Hartsfield involved a prisoner who, at the time an administrative grievance was or could have been filed, actually knew the identity of the individuals directly responsible for his alleged injuries. The result in Hartsfield is entirely consistent with the rule we adopt today, which does require a prisoner's administrative grievance to identify all who are known to have injured him

7

The crux of Brown's grievances, and of this lawsuit, is that he was supposed to receive certain snacks and an athletic supporter, both of which a prison physician allegedly prescribed for his hernia, but he never received them. Brown contends that to this day he is still uncertain as to who is responsible for failing to provide him with these items. While Brown's complaint does name Warden Sikes and Commissioner Garner as defendants, Brown's attorney has represented to us that Brown sued Warden Sikes and Commissioner Garner only because as high ranking prison officials they are in a position to identify the individuals who are actually and directly responsible for not supplying Brown with that to which he is entitled – the supporter and snacks.

That explanation is plausible. In Duncan v. Ducksworth, 644 F.2d 653 (7th Cir. 1981), for example, the plaintiff allegedly received inadequate medical care in the prison hospital and sued his warden and the prison hospital administrator. The district court dismissed the complaint because it failed to indicate the personal involvement of the defendants in the alleged medical negligence. On appeal, the Seventh Circuit reversed the dismissal as to the hospital administrator, stating:

> As administrator of the prison hospital, Freake bears responsibility for insuring that prison inmates receive adequate medical care. This

and to provide as much relevant information as reasonably possible in their administrative grievances.

8

responsibility is a sufficient basis from which to infer his personal involvement in the denial of such care at the pleading stage of the proceeding, at least where the denial is as gross as has been claimed here. If it later develops that Freake was not personally involved, he is in a better position than Duncan to identify those who were.... Under these circumstances, it is understandable that a pro se litigant would name only the administrative officer, whose identity he knows, as a defendant in his civil rights lawsuit. To dismiss such a suit because the complaint fails to expressly allege that the administrative officer did in fact know of, or acquiesce in, or was otherwise personally responsible for the claimed deprivation seems to us inconsistent with the obligation to liberally construe pro se pleadings. Instead, the district court should proceed on the claim and allow the named defendant to assert his own noninvolvement, if that is the case, and designate those who would likely have been responsible for whatever deprivation may have occurred.

Id. at 655-56 (internal citation omitted).[4] The Seventh Circuit then affirmed the dismissal of the warden, explaining that "[i]t is doubtful that a prison warden would be directly involved in the day-to-day operation of the prison hospital such that he would have personally participated in, or have knowledge of, the kinds of decisions that led to the delay in treatment complained of by Duncan." Id. at 656.

---

[4] Appellate courts have acknowledged the difficulties faced by a prisoner in identifying alleged wrongdoers before filing a complaint and have directed district courts to assist prisoners in discovering the identity of the proper defendants. See, e.g., Valentin v. Dinkins, 121 F.3d 72, 75 (2d Cir. 1997) ("In a number of cases ... appellate courts have found error in a trial court's refusal to assist a pro se plaintiff in identifying a defendant. This is particularly so where the plaintiff is incarcerated, and is thus unable to carry out a full pre-trial investigation."); Duncan, 644 F.2d at 656 ("[I]nstead of dismissing a complaint because it fails to identify certain unnamed defendants, the district court should order their disclosure or permit the plaintiff to obtain their identity through discovery. ... As a pro se inmate of a state prison, Duncan is at a distinct disadvantage in trying to discover the identity of those who were directly responsible for the delay in his treatment.").

The same thing may well be true here, but this is not a case in which the district court dismissed the warden or commissioner because of their personal non-involvement in the alleged deprivation. Instead, the district court dismissed them under § 1997e(a) because they had not been named in the grievances Brown had filed. But naming the warden and commissioner in a grievance simply because they are the top officials in charge of the prison would not have advanced any of the policies underlying the exhaustion requirement. Everyone involved in the grievance process knows who the warden and commissioner are. There is no point in making a prisoner name them in his grievance, unless they were somehow personally involved and in this case they apparently were not – or more to the point, Brown has no reason to believe that they were personally involved. Instead, as we have said, what § 1997e(a) requires, and all that it requires, is that the prisoner provide during the grievance process all of the information concerning his claims that he has or reasonably could obtain.

In his two grievances relating to the alleged denial of medical treatment, Brown stated that a prison physician had prescribed him snacks and an athletic supporter for his hernia and that he had not received them. He provided the specific date, July 8, 1996, on which the supporter was supposedly prescribed for him, and he indicated that he had asked his prison counselor, Louie T. Smith, to

look into the matter. Brown requested in the grievances to "have [his] medical care problem taken care of," and that he receive the prescribed supporter and snacks. There is nothing in the record to indicate that Brown had, or reasonably could have obtained, any additional relevant information. The best you can do is the best you can do.

For these reasons, we conclude that the district court erred in dismissing Brown's complaint for failure to exhaust administrative remedies because he did not name Warden Sikes or Commissioner Garner in his grievances. We do not go beyond the exhaustion issue. For example, nothing we say is meant to imply a view on whether this lawsuit should be dismissed for other reasons, such as failure to exhaust the appellate procedure for administrative grievances under § 1997e(a),[5] or as frivolous under 42 U.S.C. § 1997e(c)(2).

---

[5] On appeal, the defendants argue that Brown failed to exhaust his administrative remedies by filing his complaint before the appeals from the denials of his grievances were completed, and they assert that Brown's appeals from his grievances were not denied until after he filed this lawsuit. Brown, however, maintains that his grievances show that he appealed the denials to the divisional director who, according to Georgia Department of Corrections grievance procedures, was required to render a decision within 90 days of the appeal being filed. Brown contends that he did not file this lawsuit until more than 90 days had elapsed from the dates he appealed his grievances without any decision being made on them. Therefore, he argues that he effectively had exhausted the appellate process for his grievances at the time he filed his complaint.

Those arguments were not addressed by the district court and they have not been fully briefed on appeal. Therefore, we leave this issue to be addressed in the first instance, if necessary, by the district court.

11

### III. CONCLUSION

We hold that 42 U.S.C. § 1997e(a) requires a prisoner to provide in his administrative grievance as much relevant information about his claims, including the identity of those directly involved in the alleged deprivations, as the prisoner reasonably can provide. It does not require him to provide information he cannot reasonably obtain, nor does it require him to inform those who will pass on his grievance of the identity of the warden or prison commissioner. Because there is nothing to indicate that Brown had or reasonably could have obtained any relevant information beyond that which he included in his grievance, the district court should not have dismissed his lawsuit for failure to provide more information.

REVERSED AND REMANDED.