[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 4, 2008
THOMAS K. KAHN
CLERK

No. 08-11311
Non-Argument Calendar

_____

D. C. Docket No. 06-00037-CV-1-LGW

GENE L. WILLIAMS,

Plaintiff-Appellant,

versus

LOGAN MARSHALL, Sheriff,
CHRIS DURDEN, Captain,
MARCUS REYNOLDS, Deputy Sheriff,
IMOGENE CROWDER, Deputy Sheriff,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(November 4, 2008)**

Before BLACK, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Gene Williams, a state prisoner, appeals pro se the dismissal without prejudice of his complaint. 42 U.S.C. § 1983. The district court ruled that Williams failed to exhaust available administrative remedies under the Prison Litigation Reform Act. 42 U.S.C. § 1997e(a). The district court also denied Williams's motion for recusal. We affirm in part, vacate in part, and remand.

## I. BACKGROUND

Federal marshals transferred Williams to the McDuffie County Detention Center on June 22, 2005. A marshal told Deputy Sheriff Marcus Reynolds that Williams required insulin. A detention officer entered Williams's medical information into a computer during booking. Williams submitted an inmate request for medical services on June 24, 2005. The next day, Williams was found on the floor of the McDuffie County Jail and complained of chest pain. Williams was transferred to the McDuffie County Hospital and then to University Hospital for treatment. Williams returned to the McDuffie County Detention Center on June 28, 2005. On July 8, 2005, United States Magistrate Judge W. Leon Barfield released Williams on an appearance bond.

On March 9, 2006, while Williams was incarcerated at the Augusta State Medical Prison, he filed a complaint against Deputy Reynolds, Sheriff Logan

Marshall, and Deputy Sheriff Imogene Crowder of the McDuffie County Detention Center. Williams alleged that the officers were deliberately indifferent to his medical needs as a diabetic and heart patient. Williams alleged that he filed requests for medical treatment on his third and fourth days at the detention facility and suffered an insulin-induced heart attack on his fifth day at the facility.

After Williams's deposition, the officers moved for summary judgment. The officers argued that Williams failed to comply with the grievance procedure of the jail. The officers attached an affidavit executed by Durden that said the grievance policy was listed in the inmate handbook and posted in plain view in the inmate living quarters; all detention officers were trained to provide information and forms for grievances and medical needs, which were provided to the inmates on request; and under the Policy and Procedure Directive of the facility, an inmate had 72 hours to appeal to the sheriff the response to a grievance. Durden attached to the affidavit three pages from the inmate handbook and Policy Number E-401 of the McDuffie County Jail Policy and Procedure Directive. The excerpt of the inmate handbook titled "GRIEVANCE" stated that an inmate was "entitled to communicate legitimate complaints . . . in writing." The excerpt did not address appeals or medical requests. The attached policy directive stated that the jail had a "policy" to "permit[]" inmates "to submit grievances to the Jail Administration and

3

that each grievance [would] receive a response"; directed the Jail Administrator to "devise a grievance form" and respond to grievances "in writing"; and stated that "[t]he decision of the Jail Administrator may be appealed to the Sheriff within . . . 72 hours of the receipt of the grievance decision." The officers also attached a blank grievance form, which had blocks for the inmate to write his grievance and "solution desired," along with date and signature lines, and a blank appeal form, which stated that the "Chief Jailer" had 20 days to respond to the appeal.

In a response to the motion, Williams alleged that he submitted a medical request form on June 24, but when he learned the next day that he would not see the doctor until June 30, he requested a grievance form. Williams was told there was a shortage of forms and, unless he wanted to wait until the next day, he could complete a medical request form that would be "treated the same as a [g]rievance [f]orm." Williams completed a second medical request form that "somehow disappeared" or was thrown away because he went to the hospital. Williams contended that "[b]ased on the circumstances and time frame of the incident, [he] was unable to fill out a [g]rievance [f]orm."

The magistrate judge recommended that the district court grant the officials' motion for summary judgment for failure to exhaust administrative remedies and dismiss Williams's complaint without prejudice. The magistrate found that

4

Williams knew about the grievance procedure. The magistrate also found "incredible" Williams's allegations that he did not use the grievance procedure because of a "shortage of forms" and because he was later housed in another facility. The magistrate distinguished the situation from that in Goebert v. Lee County, 510 F.3d 1312, 1323 (11th Cir. 2007), where this Court concluded that an inmate did not fail to exhaust administrative remedies when she did not know that she should or could appeal the denial of medical treatment. The magistrate concluded that even if Williams was temporarily unable to use the jail's grievance procedure, he was obliged to exhaust the procedure when he returned to the jail after treatment.

After Williams received the report and recommendation, he filed a motion for recusal of the district court. Williams argued that the district court had a conflict of interest because the marshals who transferred him to the McDuffie County Detention Center and Magistrate Judge Barfield would be witnesses in his case.

The district court adopted the recommendation of the magistrate judge. The district court ruled that, even if Williams's medical request form constituted an "informal grievance," he failed to exhaust available administrative remedies by appealing that decision to the "highest level of the administrative process."

## II. STANDARD OF REVIEW

We review de novo the interpretation and application of the requirement to exhaust administrative remedies. Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005). We review the denial of a motion to recuse for an abuse of discretion. Christo v. Padgett, 223 F.3d 1324, 1333 (11th Cir. 2000).

## III. DISCUSSION

Williams makes two arguments on appeal. First, he argues that the district court erred by dismissing his civil complaint. Second, Williams complains that the district court judge should have recused from his case. We address each issue in turn.

### A. It Is Unclear from the Record Whether an Administrative Process was Available to Williams.

Under section 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or correctional facility until such administrative remedies as are available are exhausted." This requirement of exhaustion is mandatory. Johnson, 418 F.3d at 1155. We have explained that "'when a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207

6

(11th Cir. 2000)).

This Court announced recently a two-step process to decide a motion to dismiss for failure to exhaust administrative remedies. Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). In the first step, the court reviews the factual allegations in the motion to dismiss and the plaintiff's response and, if they conflict, accepts the plaintiff's factual allegations as true. Id. If, based on those facts, the plaintiff failed to exhaust administrative remedies, the court must dismiss the complaint. Id. If the complaint survives the first level of review, then the court makes findings to resolve disputes of fact related to exhaustion. Id. In this second step, the defendant must prove that the plaintiff failed to exhaust his available administrative remedies. After the court makes its findings of fact, the court decides whether the prisoner has exhausted his available administrative remedies. Id.

The magistrate judge ruled that Williams did not exhaust his available administrative remedies based on three findings. First, the magistrate judge found that Williams failed to use the available grievance procedure. Second, the magistrate judge found that, even if Williams was temporarily unable to use the available grievance procedure, he should have used it when he returned from the hospital. Third, the magistrate found that, even if Williams used a medical request

form in lieu of a grievance form, Williams's failure to state whether he received a response or appealed the decision constituted a failure to exhaust. The district court adopted the final finding of the magistrate and ruled that, even if Williams's medical request form was an "informal grievance," he failed to appeal that decision.

It is not clear from the record whether an administrative process was "available" to Williams. An administrative remedy is not "available" if "an inmate does not know about, and cannot discover through reasonable effort . . . remedies or requirements for remedies . . . by the time they are needed." Goebert v. Lee County, 510 F.3d 1312, 1322 (11th Cir. 2007). In Goerbert, we ruled that an inmate who did not know that she should or could have appealed the denial of medical treatment exhausted her administrative remedies by filing a complaint in which she requested urgent prenatal treatment that was denied four days after her baby was stillborn.

Although the record establishes that the McDuffie County Detention Center provided an administrative grievance procedure, it is not clear that Williams was aware of or could utilize that procedure. The excerpt of the inmate handbook submitted by the officers states that inmates are allowed to file grievances and that those grievances must be in writing and signed by the accepting officer. To

8

understand the grievance procedure, an inmate must reference Policy Directive E-401 which is not included or referenced in the excerpt of the handbook. Policy Directive E-401 contemplates the use of a "grievance form" that is made available "upon request." The form is evaluated, after "[c]omplet[ion] by an inmate," by the Jail Administrator.

Williams alleged that he requested a grievance form, but, even if he had received that form, it is not clear that he would have known that he could or should appeal the decision. The grievance form does not explain how to exhaust the grievance process under Policy Directive E-401. The grievance form is directed to the "Chief Jailor," not the Jail Administrator; does not state how long the Chief Jailor has to decide the grievance or provide a space to indicate that decision; and does not state how to appeal or how many days in which the inmate must appeal. Only the policy directive contains the details that an inmate is allowed to appeal the decision of the Jail Administrator to the Sheriff within 72 hours after receipt of a decision on his grievance. An inmate must use a separate form to appeal, and even that form states incorrectly that the "Chief Jailor," not the Sheriff, evaluates the appeal.

We vacate the order that dismissed Williams's complaint and remand for the magistrate judge to decide whether, in the light of our decision in Goebert,

Williams had an "available" administrative remedy. As part of that determination, the district court must decide whether a medical request form constituted a grievance under the procedures of the McDuffie County Detention Center and whether the medical request form that Williams filed on June 24, 2006 constituted a grievance under that process. If the district court concludes that the medical request form constituted a grievance, then the court must decide whether Williams should or could have known how to exhaust that grievance.

*B. The District Court Did Not Abuse Its Discretion by Denying Williams's Motion To Recuse.*

A judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Recusal is appropriate only if "'an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality.'" United States v. Patti, 337 F.3d 1317, 1321 (11th Cir. 2003) (quoting Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988)). Although a judge must recuse if he "has a personal bias or prejudice concerning a party, . . . personal knowledge of disputed evidentiary facts concerning the proceeding," or "[i]s to the judge's knowledge likely to be a material witness in the proceeding," 28 U.S.C. § 455(b)(1), (5)(iv), the allegation of bias necessary to require disqualification must be "personal as opposed to

10

judicial in nature," United States v. Meester, 762 F.2d 867, 884 (11th Cir. 1985).

The district court did not abuse its discretion by denying Williams's motion to recuse. The marshals are employed by the Department of Justice and no conflict would prevent them from testifying before the district court. That Magistrate Judge Barfield released Williams on bond, allegedly due to conditions at the McDuffie County Detention Center, is a fact arising out of a judicial proceeding that does not create any question regarding the impartiality of the district court. A decision on Williams's bond also does not make the judge a material witness to the conditions at the detention center.

## IV. CONCLUSION

We **AFFIRM** the denial of Williams's motion to recuse. We **VACATE** the order that dismissed Williams's complaint without prejudice and **REMAND** for further proceedings.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**